UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

Thompson's Transport, LLC,

               Plaintiff-Counter Defendant,

            -against-

Lisi's Towing Service, Inc.,

               Defendant-Counter Claimant.
----------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __ 2/13/2024

7:23-CV-2385 (VR)

**OPINION AND ORDER**

**VICTORIA REZNIK, United States Magistrate Judge:**

## I.   **INTRODUCTION**

This action arises from a motor vehicle mishap that turned an ordinary highway into the scene of a culinary catastrophe. While driving on the I-84 in Stormville, New York, Plaintiff-Counter Defendant Thompson's Transport, LLC's freightliner narrowly avoided a collision with other vehicles, by driving off the side of the road and into a wooded area, colliding with trees. The accident resulted in an overturned Freightliner Cascadia T/A Sleeper PX cab and chassis and a cascade of the freightliner's cargo of 45,000 pounds of frozen crinkle cut French fries. Defendant-Counter Claimant Lisi's Towing Service, Inc., was called in to clean up the accident scene and tow the freightliner to its facility in Brewster, New York.

On March 21, 2023, Thompson's commenced this action, claiming that Lisi's had negligently damaged the trailer and refrigerator unit, failed to salvage French fry cargo, improperly placed a lien on the freightliner and trailer based on exaggerated cleanup and towing fees of around $150,000, and converted the freightliner and trailer by wrongly refusing to surrender their possession. (ECF No. 1). On June 29, 2023, Lisi's filed its answer and counterclaim, claiming that it maintains a proper lien on the freightliner and trailer under N.Y.

Lien Law § 184 and that Thompson's owes more than $130,000 for the fair and reasonable costs of its services and storage fees.  (ECF No. 15).  On August 16, 2023, the parties consented to jurisdiction before a magistrate judge for all purposes, pursuant to 28 U.S.C. § 636(c).

Pending before the Court is Thompson's motion to dismiss Lisi's counterclaim.  (ECF No. 26).  For the reasons explained below, Thompson's motion is **GRANTED**.  Lisi's counterclaim is dismissed to the extent it claims recourse beyond an *in rem* lien against the freightliner and trailer.  But Lisi's request to amend its counterclaim is **GRANTED** to the extent it can assert a claim under contract law.

## II. <u>BACKGROUND</u>

### A. Thompson's Complaint

On March 21, 2023, Thompson's commenced this diversity action against Lisi's alleging as follows.  (ECF No. 1).  On August 9, 2022, Thompson's rented a 2022 Freightliner Cascadia T/A Sleeper PX cab and chassis to deliver a load of Penobscot McCrum, LLC frozen crinkle cut French fries, weighing about 45,000 pounds, from Maine to Alabama.  (*Id.* at 2).[1]  While on the I-84 in Stormville, New York, the freightliner narrowly avoided a collision with other vehicles by driving off to the left side of the road and into a wooded area, where it collided with trees and overturned.  (*Id.* at 3).  The accident caused damage to the tractor and trailer and the French fry cargo was spilled.  (*Id.*).  Lisi's was engaged to provide recovery and towing services.  (*Id.*).  The freightliner tractor and trailer were towed to Lisi's facility in Brewster, New York.  (*Id.*).

Thompson's alleges that, in connection with its work, Lisi's charged for "excessive cleanup and work fees" by "inflat[ing] invoices and seek[ing] exorbitant fees" from Thompson's.  (*Id.*).  Lisi's invoice "detail[ed] work completed at the scene involving use of a heavy duty

---

[1] All page numbers to documents filed on ECF refer to pdf pagination.

rotator, transportation of an excavator, use of incident recovery trailer equipment, use of a disposal container, completion of disposal trips, and crew work, among other things." (*Id.*). Thompson's attached a copy of the invoice, totaling $132,390.33. (*Id.* at 12–17).

Thompson's also alleges that Lisi's failed to complete its work in an appropriate manner by exacerbating damage to the freightliner tractor, trailer, and refrigerator unit, and by failing to salvage any of the French fry cargo. (*Id.* at 3–4). The freightliner's value is $174,890. (*Id.* at 9). Lisi's sent Thompson's a notice, advising that the freightliner and trailer were being housed at its Brewster facility at a combined rate of $260.00 per day as of October 11, 2022. (*Id.* at 4, 19–20). Lisi's notice stated that "[i]f storage and towing charges are not paid for, a lien will be placed on your vehicle." (*Id.*).

Thompson's insurer provided $5,000 for debris removal and provided payment for the destroyed French fry cargo. (*Id.* at 5). But because Lisi's allegedly failed to recover the cargo, Thompson's was forced to pay a $1,000 deductible to receive payment for it. (*Id.*).

Thompson's asserts five causes of action: (1) three negligence claims for exacerbated damage to the trailer and refrigerator unit and failure to salvage the French fry cargo (*id.* at 5–7); (2) a claim for declaratory judgment on the amount owed to Lisi's and the propriety of Lisi's lien (*id.* at 7–8); and (3) a conversion claim for Lisi's failure to surrender possession of the freightliner, trailer, and refrigerator unit. (*Id.* at 8–9). Thompson's requests damages totaling $41,000, a declaratory judgment that Lisi's lien is null and void, and return of its property in an amount no less than $174,890.00 plus interest. (*Id.* at 9).

**B. Lisi's Counterclaim**

On June 29, 2023, Lisi's filed its answer with counterclaim, alleging as follows. (ECF No. 15). On August 9, 2022, Thompson's freightliner tractor and trailer was involved in a motor

vehicle accident on the I-84 in Stormville, New York.  (*Id.* at 5).  Lisi's "was dispatched to the aforesaid location to remove [Thompson's] tractor and trailer."  (*Id.*).  Lisi's "performed services identified on its Invoice #22-144, which totaled $133,014.87 exclusive of storage fees and attorneys' fees."  (*Id.*; *see* ECF No. 15-1 at 2–3).  After removing the tractor and trailer from the scene, Lisi's notified Thompson's that it "would be responsible for all costs and fees for the work performed by [Lisi's], including but not limited to the storage of [Thompson's] tractor and trailer."  (ECF No. 15 at 6).  To date, Thompson's "has failed to pay [Lisi's] for its services despite [Lisi's] repeated requests that it do so."  (*Id.*).  Thus, Lisi's "has sustained damages in the sum of $133,014.87, and continuing, plus storage, costs, interest, taxes and attorneys' fees." (*Id.*).  Finally, Lisi's "maintains a lien pursuant to N.Y.S. Lien Law §184."  (*Id.*).

### C.  Thompson's Motion to Dismiss

Thompson's now moves to dismiss Lisi's counterclaim, arguing that Lisi's failed to state a counterclaim, because N.Y. Lien Law § 184 provides a right *in rem* against property but does not provide an avenue for *in personam* liability.  (ECF No. 28 at 4).  Thus, to the extent Lisi's claims that Thompson's owes Lisi's a sum of money, N.Y. Lien Law § 184 does not provide for such monetary relief.  (*Id.* at 4–5).  Thompson's also argues that while monetary relief may be available under contract law, Lisi's has failed to allege sufficient facts to support any such theories of relief, including unjust enrichment or promissory estoppel.  (*Id.* at 5–7).  Rather, because the New York State Police had engaged Lisi's to perform its services, any contractual remedy would be available against the State Police, and not Thompson's.  (*Id.* at 5).

Lisi's opposes, arguing that its lien is valid (ECF No. 33 at 4–7), and that N.Y. Lien Law § 184 "was enacted to protect businesses like Lisi's."  (*Id.* at 7).  Lisi's also argues that Thompson's "points to no credible authority" for its assertion that "Lisi's must go to law

enforcement for recovery of its alleged costs and expenses" (*Id.*).  In the alternative, Lisi's requests leave to amend its counterclaim.  (*Id.*).

### III.DISCUSSION

#### A.  Legal Standard

A court evaluates a motion to dismiss a counterclaim under Rule 12(b)(6) of the Federal Rules of Civil Procedure using the same standard as a motion to dismiss a complaint.  *Phx. Cos. v. Concentrix Ins. Admin. Sols. Corp.*, 554 F. Supp. 3d 568, 585 (S.D.N.Y. 2021); *see also GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 99 (2d Cir. 2019) (explaining that a "counterclaim, like all pleadings, must conform to the pleading requirements of *Twombly* and *Iqbal*").[2]  To survive a Rule 12(b)(6) motion, a counterclaim must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A counterclaim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the [counter-]defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Where a [counterclaim] pleads facts that are merely consistent with a [counter-]defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* (quoting *Twombly*, 550 U.S. at 557).

In considering a motion to dismiss a counterclaim for failure to state a claim, a district court must "accept[] as true all factual claims in the [counterclaim] and draw[] all reasonable inferences in the [non-moving party's] favor."  *Slattery v. Hochul*, 61 F.4th 278, 285–86 (2d Cir. 2023).  This tenet, however, is "inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Rather, the counterclaim's "factual allegations must be enough

---

[2] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, "*i.e.*, enough to make the claim plausible." *Arista Recs. LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010). A counterclaim is properly dismissed, where, as a matter of law, "the allegations in [the counterclaim], however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.

"In considering a motion to dismiss for failure to state a claim, the district court is normally required to look only to the allegations on the face of the [counterclaim]," but "the court may consider documents that are attached to the [counterclaim], incorporated in it by reference, integral to the [counterclaim], or the proper subject of judicial notice." *United States v. Strock*, 982 F.3d 51, 63 (2d Cir. 2020).[3]

### B. N.Y. Lien Law § 184 Does Not Provide for *In Personam* Liability

Lisi's claims that it "maintains a lien pursuant to N.Y.S. Lien Law §184" and Thompson's "owes" Lisi's "the sum of $133,014.87." (ECF No. 15 at 6). Although it may be true that Lisi's can maintain a lien against Thompson's property unless and until Thompson's makes payment to satisfy the lien, the Lien Law itself does not provide an independent claim for payment. In other words, N.Y. Lien Law § 184 only provides an *in rem* right and does not provide a basis for *in personam* liability. Thus, if Lisi's relies on N.Y. Lien Law § 184 to assert a claim for *in personam* liability, Lisi's has failed to state a claim upon which relief could be granted.

In relevant part, N.Y. Lien Law § 184(1) provides that "[a] person keeping a garage, hangar or place for the storage, maintenance, keeping or repair of motor vehicles" and who

---

[3] Lisi's has submitted exhibits in its opposition to Thompson's motion to dismiss. (*See* ECF Nos. 32-3, 32-4). In resolving this motion, the Court relies on the invoices at ECF No. 32-4, which were incorporated by reference into Lisi's Counterclaim. (*See* ECF No. 15 at 5). The Court does not rely on the remaining exhibits.

"tows and stores any motor vehicle at the request of a law enforcement officer authorized to remove such motor vehicle . . . has a lien upon such motor vehicle . . . for the sum due for such towing, storing, maintaining, keeping or repairing of such motor vehicle . . . and may detain such motor vehicle . . . at any time it may be lawfully in his possession until such sum is paid."  N.Y. Lien Law § 184(1).  N.Y. Lien Law § 184(2) further provides that "[a] person who tows and stores a motor vehicle at the request of a law enforcement officer authorized to remove such motor vehicle shall be entitled to a lien for the reasonable costs of such towing and storage," provided that the garage-owner follows the notice provisions outlined in the statute.  N.Y. Lien Law § 184(2).

"The purpose of the enactment is to accord a form of security for personal credit extended by the vendor of service and supplies enhancing the value of the specified vehicle." *Nat'l Union Fire Ins. Co. v. Eland Motor Car Co.*, 85 N.Y.2d 725, 730 (1995).  N.Y. Lien Law § 184 "was an outgrowth of the artisan's lien recognized at common law, whereby a worker who by his labor enhanced the value of a chattel, obtained a lien upon it for the reasonable value of the work performed.  That lien endowed the artisan with the exclusive right to possession of the repaired article until his charges were satisfied." *Id.*  The garage keeper's lien "is a specific one attaching only to the certain motor vehicle that was the subject of the unpaid charges." *Id.*

Thus, N.Y. Lien Law § 184, "[l]ike any other lien, . . . is merely a right *in rem* against the property itself, and, in effect, subjects the chattel to an incumbrance as security for the principal

7

debt." *In re Estate of Diamond*, 162 Misc. 604, 604–05 (Kings Cnty. Sur. Ct. 1937).[4]  This

security "as against the *rem* . . . may not be metamorphosed into a preferential right *in personam*

against the individual debtor." *Id.* at 605.  Conceivably, a garage keeper may have, at the same

time, both an *in rem* right under N.Y. Lien Law § 184 and a contractual right, but the lien is only

enforceable against the thing itself.  *Express Freight Sys., Inc. v. Walter*, 219 A.D.2d 813, 814

(4th Dep't 1995) ("The contractual remedy of a garageman, if any, is concurrent with his remedy

under the Lien Law and a garageman may recover damages for storage on proof of an agreement

to pay storage charges."); *Estate of Diamond*, 162 Misc. at 605 ("The garage originally

possessed two rights, namely, an ordinary contract right against the decedent, which survives as

against his estate, and a right against the chattel itself as security for the contract right.

Conceivably both may still be in existence, but the latter is enforc[ea]ble only against the thing

itself in the manner particularly specified in article 9 of the Lien Law.").  Thus, in the absence of

a contractual right, a garage keeper cannot recover money from the vehicle's owner and must

instead resort to his *in rem* remedy under New York Lien Law.  *See Gotham Credit Corp. v. A.

& H. Serv. Station, Inc.*, 120 N.Y.S.2d 749, 750 (App. Term, 1st Dep't 1953) (per curiam) ("In

the absence of a specific agreement, the repairman may not recover charges for storage.  He is

under a duty to proceed with his remedy under the Lien Law if the owner fails to claim his

---

[4] *See also* 13 ELIZABETH M. BOSEK & ELIZBETH WILLIAMS, CARMODY-WAIT 2D NEW YORK PRACTICE § 84:23 (2023) ("The lien of a bailee of a motor vehicle, motorboat, or aircraft is merely a right in rem against the property itself and, in effect, subjects the chattel to an encumbrance as security for the principal debt."); 61A JOSEPH BASSANO ET AL., CORPUS JURIS SECUNDUM § 1835 (2023) ("A garage keeper's statutory lien on a motor vehicle is a right in rem against the property itself."); 62 RACHEL M. KANE & CHARLES J. NAGY, NEW YORK JURISPRUDENCE 2D GARAGES § 75 (2023) ("The garagekeeper's lien is merely a right in rem against the property itself and, in effect, subjects the chattel to an encumbrance, as security for the principal debt.  The lien entitles the garage keeper only to retain possession of the automobile until the lien is satisfied.").

automobile within a reasonable time after notice that the repairs have been completed.").[5]

Because N.Y Lien Law § 184 does not provide an avenue for Lisi's to recover *in personam* from Thompson's, the Court must dismiss Lisi's counterclaim to the extent it asserts an *in personam* claim for relief under N.Y. Lien Law § 184.  In opposition to Thompson's motion, Lisi's argues, primarily, that its lien is valid.  (ECF No. 33 at 4–7).  But Thompson's does not, at the pleading stage, challenge the lien's validity.  (*See* ECF No. 34 at 2).  Rather, Thompson's argues that N.Y. Lien Law § 184 only provides an *in rem* right.  (*Id.*).  Thus, the Court need not address whether Lisi's has sufficiently asserted its lien.

Lisi's further argues that the notion that it "is not entitled to any compensation for the extensive work done defies common sense" because N.Y. Lien Law § 184 "was enacted to protect businesses like Lisi's."  (ECF No. 33 at 7).  That may be true but N.Y. Lien Law § 184 does so by providing Lisi's with an *in rem* right to the vehicle.  While Lisi's is not entitled to monetary relief under N.Y. Lien Law § 184, it does not follow that Lisi's cannot obtain any compensation for its work.  Rather, its compensation is the lien itself and Lisi's may satisfy its lien by selling the vehicle.  *See* N.Y. Lien Law § 200 ("A lien against personal property . . . may be satisfied by the sale of such property . . . .");  *Santander Consumer USA, Inc. v. Aledrew Corp.* 206 A.D.3d 1191, 1192 (3d Dep't 2022) ("A garagekeeper may satisfy a lien against such motor vehicle by selling the same . . . .").  Finally, if Lisi's has a contractual right against Thompson's, then N.Y. Lien Law § 184 does not foreclose such a remedy.  *See* N.Y. Lien Law § 205 ("The

---

[5] *See also Elfadil v. Cyclone Auto Body Collision, Inc.*, 113 N.Y.S.3d 462 (App. Term, 2d Dep't 2019) ("[N.Y. Lien Law § 184(2)] allows a person who tows a vehicle at the request of a police agency a lien for reasonable costs of the towing and storage so long as the person complies with the notice requirements.  It is undisputed that defendant did not comply with the notice requirements.  Therefore, defendant did not have a valid lien for storage fees and is unable to recover for storage in the absence of a specific agreement.  Here, there was no agreement between the parties for storage fees.  Thus, defendant was not entitled to storage fees.");  *Walter*, 219 A.D.2d at 814 ("[A] garageman may recover damages for storage on proof of an agreement to pay storage charges.");  *Phillips v. Catania*, 155 A.D.2d 866, 866 (4th Dep't 1989) ("In the absence of a specific agreement, the repairman may not recover damages for storage.").

preceding provisions of this article do not preclude any other remedy by action or otherwise, now

existing, for the enforcement of a lien against personal property, or bar the right to recover so

much of the debt as shall not be paid by the proceeds of the sale of the property."); *Walter*, 219

A.D.2d at 814.

Accordingly, Thompson's motion to dismiss Lisi's counterclaim is **GRANTED**.  Lisi's

counterclaim is dismissed to the extent it claims recourse beyond an *in rem* lien against the

freightliner and trailer.

### C. Leave to Amend Lisi's Counterclaim

An amendment to add a counterclaim is governed by Rule 15 of the Federal Rules of

Civil Procedure.  Fed. R. Civ. P. 13, 2009 Advisory Committee Notes.  Under Rule 15(a)(2),

after expiration of the time that a party may amend its pleading as a matter of course, the party

may amend its pleading "only with the opposing party's written consent or the court's leave."

Fed. R. Civ. P. 15(a)(2).  "The court should freely give leave when justice so requires."  *Id.*; *see,*

*e.g.*, *Foman v. Davis*, 371 U.S. 178, 182 (1962) ("Rule 15(a) declares that leave to amend 'shall

be freely given when justice so requires'; this mandate is to be heeded.").  "This is a liberal and

permissive standard, and the only grounds on which denial of leave to amend has long been held

proper are upon a showing of undue delay, bad faith, dilatory motive, or futility."  *Sacerdote v.*

*N.Y. Univ.*, 9 F.4th 95, 115 (2d Cir. 2021); *Foman*, 371 U.S. at 182.  "[E]ven where such factors

are present, the rule in this Circuit has been to allow a party to amend its pleading in the absence

of prejudice or bad faith."  *Martin v. Sprint/United Mgmt. Co.*, No. 15-cv-5237, 2016 WL

2757431, at *2 (S.D.N.Y. May 12, 2016) (quoting *Block v. First Blood Assocs.*, 988 F.2d 344,

350 (2d Cir. 1993)).

"[U]nder the liberal standard of Rule 15(a), leave to amend may be appropriate at any stage of litigation." *Duling v. Gristede's Operating Corp.*, 265 F.R.D. 91, 97 (S.D.N.Y. 2010). Delay alone is usually not a sufficient reason for denying a motion to amend. *See Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) ("Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for the district court to deny the right to amend."); *Rachman Bag Co. v. Liberty Mut. Ins. Co.*, 46 F.3d 230, 234–35 (2d Cir. 1995) ("Delay alone unaccompanied by such a 'declared reason' does not usually warrant denial of leave to amend."). Even so, "a court has discretion to deny leave to amend where the motion is made 'after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice other parties, or where the belated motion would unduly delay the course of proceedings by, for example, introducing new issues for discovery.'" *State Farm Ins. Cos. v. Kop-Coat, Inc.*, 183 F. App'x 36, 37–38 (2d Cir. 2006) (Summary Order) (quoting *Grace v. Rosenstock*, 228 F.3d 40, 53–54 (2d Cir. 2000)). "The non-moving party has the burden to show any prejudice from the proposed amendment." *Harleysville Worcester Ins. Co. v. Consigli & Assocs., LLC*, No. 21-cv-934, 2023 WL 4684652, at *4 (S.D.N.Y. July 21, 2023); *see, e.g.*, *Lamont v. Frank Soup Bowl, Inc.*, No. 99-cv-12482, 2000 WL 1877043, at *2 (S.D.N.Y. Dec. 27, 2000) ("Plaintiff bears the burden of establishing that an amendment to the answer would be prejudicial."). In determining what constitutes prejudice, a court considers whether the amendment would "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Block*, 988 F.2d at 350.

Here, the Court grants Lisi's leave to amend its counterclaim to the extent it can assert liability under contract law.  As explained above, a garage keeper may concurrently have an *in rem* right to the vehicle under N.Y. Lien Law § 184 and a contractual right to monetary damages against the vehicle's owner.  *Walter*, 219 A.D.2d at 814; *Gotham Credit Corp.*, 120 N.Y.S.2d at 750; *Estate of Diamond*, 162 Misc. at 605.  Lisi's request is not unduly delayed because it was made in the early stages of discovery and was included in its response to Thompson's motion to dismiss the counterclaim.  *Contra State Farm Ins. Cos.*, 183 F. App'x at 38–39 (affirming denial of leave to amend where party moved to amend four years after action filed, had notice of preemption defense that could justify amended claim, and failed to take various opportunities to amend).  There is also no indication that Lisi's request has been made in bad faith, or that granting the request would prejudice Thompson's.  Indeed, any amended counterclaim would arise under the same facts as the claims in Thompson's complaint, so that any impact on the scope of discovery should be negligible.  *Cf., e.g., Martin*, 2016 WL 2757431, at *4 (holding that a proposed amendment would not prejudice the opposing party where "any additional discovery costs . . . would be relatively marginal").  Finally, the Court cannot discern, at this stage, that leave to amend would be futile, as Lisi's may be able to assert a contract or quasi-contract claim that would survive a motion to dismiss.  Although Thompson's argues otherwise, the complaint itself alleges that there had been an "agreement between Thompson and Lisi for, inter alia, towing and recovery work."  (ECF No. 1 at 6).  In fact, the complaint makes at least six references to an "agreement" between Thompson's and Lisi's.  (*See id.* at 6–9).

## IV. <u>CONCLUSION</u>

For these reasons, Thompson's motion to dismiss Lisi's counterclaim is **GRANTED**.  Lisi's counterclaim is dismissed to the extent it claims recourse beyond an *in rem* lien against the

freightliner and trailer.  But Lisi's request to amend its counterclaim is **GRANTED** to the extent

it can assert a claim under contract law.

The Clerk of Court is respectfully directed to terminate the pending motion at ECF No.

26.

**SO ORDERED.**

DATED:        White Plains, New York
              February 13, 2024


                                   _____
                                   VICTORIA REZNIK
                                   United States Magistrate Judge

13